IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, | ) ) ) | |
| *Plaintiff,* | ) ) ) | Case No. 1:24-cv-790 (PTG/IDD) |
| v. | ) ) | |
| TARDIF SHEET METAL & AIR CONDITIONING, INC., *et al.,* | ) ) ) | |
| *Defendants.* | ) ) ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Board of Trustees Sheet Metal Workers' National Pension Fund's ("NPF") Motion for Summary Judgment. Dkt. 32. NPF is an employee pension benefit plan that filed this civil action against Tardif Sheet Metal & Air Conditioning, Inc. ("Tardif Sheet Metal") and co-owners Michael and Mercedes Tardif ("Tardifs"), proceeding *pro se*, collectively ("Defendants"). Dkt. 1. NPF's complaint seeks a monetary judgment against Defendants for withdrawal liability, accrued interest, liquidated damages, as well as attorneys' fees and costs. *Id.* ¶ 1. On January 3, 2025, this Court ordered that a default judgment be entered in favor of NPF and against Tardif Sheet Metal. Dkt. 19. NPF now seeks summary judgment against the Tardifs for the monetary award.

The Tardifs contend that Tardif Sheet Metal qualifies for an exemption because it was essentially a family-owned, small business that closed, and the work it performed qualifies for an exemption. Dkt. 36 at 2; Dkt. 37 ¶4; Dkt. 39 at 2; Dkt. 40 ¶ 4; Dkt. 40-1 at 1. NPF argues that

1

the Tardifs are personally liable for Tardif Sheet Metal's judgment because they own both the company and the land leased to the company. Additionally, NPF claims that the Tardifs waived their defenses because they failed to raise them through arbitration within the statutory deadline. For the reasons that follow, the Court grants Plaintiff's Motion for Summary Judgment.

## I.    Factual Background[1]

NPF is an employee benefit trust fund located in Falls Church, Virginia. Dkt. 33-1 ¶ 3. On February 24, 2016, Tardif Sheet Metal agreed to be bound to a collective bargaining agreement negotiated between the Sheet Metal and Air Conditioning Contractors National Association Southern California, formerly known as the Sheet Metal and Air Conditioning Contractors National Association of Los Angeles and of Orange Empire (collectively, "SMACNA") and the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a the Sheet Metal Workers' International Association, Local Union NO. 105 (the "Union" or "Local 105"). *Id.* ¶¶ 4-5. Tardif Sheet Metal also agreed to be bound to a series of successor collective bargaining agreements, including an agreement effective for the period of July 1, 2021 through June 30, 2024. *Id.* ¶¶ 7-8. Under the agreement, Tardif Sheet Metal was obligated to submit monthly remittance reports and fringe benefit contributions to NPF, and to abide by the terms and conditions of the Trust Documents establishing the fund. *Id.* ¶¶ 8-9; 33-1, Ex. 1 at 18-75, Ex. 4 at 89-187.

On April 30, 2022, Tardif Sheet Metal permanently ceased operations and remains inactive in the construction industry. Dkt. 40 ¶ 6. NPF determined that Tardif Sheet Metal effected a complete withdrawal from the NPF on or about May 1, 2022, within the meaning of Section

---

[1] The facts recited here are undisputed and supported by the record, unless otherwise noted.

4203(a) of the Employee Retirement Income Social Security Act ("ERISA"), 29 U.S.C. § 1383(a). Dkt. 33-1 ¶ 15.

As of May 1, 2022, Defendants Michael Tardif and Mercedes Tardif were a married couple who were the sole owners of Tardif Sheet Metal. *Id.* ¶ 10; Dkt. 37 ¶ 1. Tardif Sheet Metal operated out of a property, located at 412 N. Sante Fe Street Santa Ana, California. Dkt. 33-1 ¶ 11. Michael and Mercedes Tardif were the sole owners of that property. *Id.* ¶ 12. Tardif Sheet Metal did not pay rent or officially lease the Property. *Id.* ¶ 13. Other tenants of the property paid Michael and Mercedes Tardif rent. *Id.* ¶ 14.

On July 13, 2023, NPF sent a notice to Michael Tardif at his personal residence informing the Tardifs of Tardif Sheet Metal's withdrawal liability. *Id.* ¶ 16. The liability payments were amortized over thirty-nine (39) quarterly payments, the first payment being due on September 1, 2023. *Id.* Pursuant to Section 4219(b)(2)(A) of ERISA, Tardif Sheet Metal had ninety (90) days from the receipt of the initial notice to request a review of the liability and/or the schedule of payments. *Id.* ¶ 17.

On October 12, 2023, Tardif Sheet Metal disputed the notice of withdrawal via email. *Id.* ¶ 18; Dkt. 42 at 2. Defendants, however, did not initiate arbitration or request a formal review. Dkt. 33-1 ¶¶ 18-19. On November 16, 2023, NPF advised Tardif Sheet Metal, via letter in care of Michael Tardif, that it had failed to make the September 1, 2023 amortized payment, that it could cure the delinquency, and that failure to cure the delinquency within sixty days would constitute a default. *Id.* ¶ 21. Tardif Sheet Metal failed to cure the default. *Id.* ¶ 23. On December 2, 2023, NPF requested information from Tardif Sheet Metal to evaluate the withdrawal liability assessment. Dkt. 33 ¶ 14. Defendants never responded to NPF's request or made any liability

3

payments. *Id.* The Trust Documents provide for the payment of interest from the date payment was due as well as attorneys' fees. *Id.* ¶¶ 26-28.

In this case, the unpaid withdrawal liability was $168,091.21. *Id.* ¶ 25. In the event of default, the Trust Document provides that the employer must pay the greater of interest at a rate of 0.0205%, compounded daily or liquidated damages equal to 20% of the delinquent withdrawal liability; attorneys' fees; and costs incurred to recover from the employer. Dkt. 33-1, Ex. 5, Appx. A, Sec. 8.

On May 10, 2024, NPF filed the instant suit. Dkt. 1. This Court entered a default judgment against Tardif Sheet Metal for a monetary award based on withdrawal liability and related costs. Dkt. 19. Thereafter, NPF sought summary judgment against the Tardifs. Dkt. 32. This matter has been fully briefed and argued; thus, it is ripe for disposition.

## II.  Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For the dispute of material fact to be "genuine," "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

4

317, 323 (1986).    Once the moving party meets that burden, "the non-moving party must demonstrate through the pleadings and subsequent discovery materials that a genuine issue for trial does exist." *Shover v. Chestnut*, 798 F. App'x 760, 761 (4th Cir. 2020).    To do so, the "non-moving party must offer 'sufficient proof in the form of admissible evidence' instead of 'relying solely on the allegations of [its] pleadings.'" *Est. of Alvarez v. Rockefeller Found.*, 96 F.4th 686, 693 (4th Cir. 2024) (quoting *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022)).    The nonmovant "cannot create a genuine issue of material fact through mere speculation or the building on one inference upon another." *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1260 (4th Cir. 1993) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

When considering summary judgment, a court must "always accept the facts in the light most favorable to the nonmoving party." *Williamson v. Stirling*, 912 F.3d 154, 178-79 (4th Cir. 2018).    The court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015).

### III.    Discussion

As an initial matter, it has already been concluded that Tardif Sheet Metal withdrew from the plan.    The main legal issues on summary judgment are (1) whether the Tardifs are jointly and severally liable with Tardif Sheet Metal, and, if so (2) whether they waived their defense by failing to timely initiate arbitration.    The Tardifs assert that they are not liable to NPF for withdrawal liability because they fall under an exemption.    Plaintiff argues that the Tardifs waived that defense because they did not raise it within the 60-day statutory window.    The Court addresses each issue in turn.

**A. Whether the Tardifs are Joint and Severally Liable**

Under well-settled law, the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan" and that the "withdrawal liability is the employer's proportionate share of the plan's 'unfunded vested benefits.'" *Trs. Of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 440 (4th Cir. 2015) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984)). Employers who cease operations or cease an obligation to contribute to a multiemployer pension plan are liable for withdrawal liability. 29 U.S.C. § 1383. This liability extends to all trades or businesses which are under common control with the employer. 29 U.S.C. § 1301(b)(1).

A group of trades or businesses under common control is generally referred to as a "controlled group," and all members of the controlled group are jointly and severally liable with one another. *See McDonald v. Centra, Inc.*, 946 F.2d 1059, 1065 (4th Cir. 1991); *see also Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 120 (4th Cir. 1991) ("It is established law that each member of a control group is jointly and severally liable under ERISA for withdrawal liability generated by any member's activities"). Thus, for the Tardifs to be jointly and severally liable, they must (1) be in common control of Tardif Sheet Metal, and (2) qualify as a trade or business.

*i. Common Control*

The Court finds that the Tardifs are in common control with Tardif Sheet Metal. Regulations promulgated under ERISA § 4001, 29 U.S.C. § 1301(b)(1), have adopted the Internal Revenue Service's regulations defining "trades or businesses under common control." 29 C.F.R. § 4001.3(a)(1) (referencing 26 C.F.R. § 1.414(c)-1, *et seq.*). Where the same five or fewer people

6

own a controlling interest in each organization such that they are in effective control of each organization, they are in common control.[2] 26 C.F.R. § 1.414(c). Additionally, an individual shall be considered to own an interest owned by or for his or her spouse. 26 C.F.R. § 1.414(c)-4(b)(5)(i).

The parties do not dispute that the Tardifs are married and owned Tardif Sheet Metal and the property that was occupied by Tardif Sheet Metal. Dkt. 40-1 ¶ 4. As 100% owners of both, they are in common control of both under the law. *See* 26 C.F.R. § 1.414(c). As a married couple, their interest is attributed to each of them individually. *Id.* Thus, the Tardifs are each in common control with Tardif Sheet Metal.

### ii. Trade or Business

The Court finds that the Tardifs operated as a trade or business when they constructively leased property to Tardif Sheet Metal. A fellow jurist in this District considered a similar case with the same Plaintiff. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Bishop*, 600 F. Supp. 3d 602, 609 (E.D. Va. 2022). There, the defendant owned both the company and the property that the company leased. *Id.* The court held that leasing commercial property constituted a "trade or business." *Id.* "To hold otherwise would incentivize ERISA employers to fractionalize their assets, placing property outside the reach of parties entitled to collect withdrawal liability, which is the very conduct § 1301(b)(1) serves to combat." *Id.* This Court agrees.

Here, like in *Bishop*, the parties do not dispute that the Tardifs leased property that they owned to Tardif Sheet Metal. While they did not charge Tardif Sheet Metal rent, there was a constructive lease because Tardif Sheet Metal was still able to benefit from using the space. Dkt. 40-1 ¶ 4. Courts have held that under these facts, the entity leasing the space is a trade or business

---

[2] A "controlling interest" is defined as 80 percent or more of stock in each corporation. 26 CFR § 1.414(c)-2(b)(2).

and is not able to fractionalize its assets to avoid ERISA withdrawal liability. *See Bishop*, 600 F. Supp. 3d at 609; *see also Cent. States Se. & Sw. Areas Pension Fund v. Messina Prods., LLC*, 706 F.3d 874, 883 (7th Cir. 2013) (holding that even with no formal lease the defendant was subject to withdrawal liability when they owned the land used by the company they also owned). Thus, the Tardifs are joint and severally liable because they operated as a "trade or business" when they constructively leased their property to Tardif Sheet Metal.

### B. Whether the Tardifs Waived Their Defense

Next, the Court considers whether the Tardifs waived their defense of not being subject to withdrawal liability under the building and construction exemption when they failed to initiate arbitration as required by statute.

"Any dispute between an employer and the plan sponsor . . . *shall* be resolved" through arbitration within a sixty (60) day period of receiving notice of the complete withdrawal. 29 U.S.C. § 1401(a)(1) (emphasis added). The Fourth Circuit has deployed a strict interpretation of the statute, and found that failing to initiate arbitration within the 60-day window constitutes a waiver of defenses. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Services, Inc.*, 469 F.3d 369, 375–76 (4th Cir. 2006). The Fourth Circuit has also noted that the "pay now, dispute later" scheme is designed to protect the financial stability of pension plans, not for the protection of employers. *Teamsters Joint Council No. 83*, 947 F.2d at 119.

The parties do not dispute that the Tardifs failed to initiate arbitration. Instead, the Tardifs believe that they qualify for the construction exemption under 29 U.S.C. § 1383(b). However, they raised that defense for the first time in their September 2024 answer to Plaintiff's complaint. Dkt. 15 at 3. This was outside of the 60-day statutory window because it was over a year after the Tardifs received the July 2023 notice of withdrawal demand letter. Dkt. 33 at 15. Not initiating

8

arbitration and asserting an exemption as a defense a year later in court waives that defense. *See McDonald*, 946 F.2d at 1063 (holding that defenses are judicially barred when the party did not seek arbitration within the statutory period).

The Tardifs declared that they operated for over 50 years under the guidance and understanding that the work they performed qualified for an exemption from ERISA withdrawal liability. Dkt. 40 ¶¶ 2–8. While that may be true, they still waived that defense because they did not initiate arbitration within the statutory 60-day window. Under ERISA law, Defendants *shall* resolve disputes through arbitration within 60 days of receiving notice. *See* 29 U.S.C. § 1401(a)(1) (emphasis added). The Tardifs were required to seek arbitration and raise any defenses at that time, not over a year later. Good faith reliance on industry guidance does not absolve a defendant from their duty under the ERISA statute. Accordingly, the Court finds that the Tardifs waived their defense.

### C. Calculation of Award Liability

Having determined that the Tardifs waived their defense, the Court finds that the Tardifs are liable to Plaintiff for the withdrawal liability principal, interest on the amount due, liquidated damages, and reasonable attorneys' fees and costs. In the event of a failure to make any payment when due, "a plan sponsor may require immediate payment of the outstanding amount of withdrawal liability, plus accrued interest on the outstanding liability from the due date of the first payment which was not timely made." ERISA § 4219(c)(5); 29 U.S.C. § 1399(c)(5). The agreement under which Defendants are bound provides that the employer must pay interest at a rate of 0.0205%, compounded daily, liquidated damages equal to 20% of the delinquent withdrawal liability, and attorneys' fees and costs incurred to recover from the employer. Dkt. 33-1, Ex. 5, Appx. A, Sec. 8.

Here, the Court has ordered a judgment against the Tardifs for $168,091.21 for the full withdrawal liability principal, $7,257.32 in interest on the outstanding principal, and $33,618.24 in liquidated damages.  Dkt. 19.  The judgment also included attorneys' fees and costs in the amount of $5,710.53 that were calculated through August 2024.  *Id.*  This Court orders a judgment against the Tardifs but the amount must be recalculated to reflect the current amount owed to the date of judgment, including the updated attorneys' fees and costs under 29 U.S.C. § 1132(g)(2).

## IV.    Conclusion

For the reasons stated above, the Court finds that the Tardifs, as landlord to Tardif Sheet Metal, qualify as a trade or business under control with Tardif Sheet Metals.  Accordingly, they are jointly and severally liable for the Tardif Sheet Metal's withdrawal liability and Plaintiff's Motion for Summary Judgment (Dkt. 32) is granted.


A separate order will issue.


Entered this __31st__ day of March, 2026.
Alexandria, Virginia

_____ /s/
Patricia Tolliver Giles
United States District Judge

10